IN THE MATTER OF THE ASSIGNMENT FOR THE BENE-
FIT OF CREDITORS OF MUNSON-LIED COMPANY, A
CORPORATION OF NEW JERSEY, ASSIGNOR, TO
ALLAN L. TUMARKIN, ASSIGNEE.

ALLAN L. TUMARKIN, APPELLANT, v. UNITED STATES
OF AMERICA, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 22, 1961—Decided June 26, 1961.

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. Allan L. Tumarkin* argued the cause for appellant (*Mr. William A. Ancier,* on the brief).

*Mr. Raymond W. Young,* Assistant United States Attorney, argued the cause for respondent (*Mr. Chester A. Weidenburner,* United States Attorney, attorney; *Mr. Young,* on the brief).

The opinion of the court was delivered by

FREUND, J. A. D.   This appeal by Allan L. Tumarkin, assignee for the benefit of creditors of Munson-Lied Company, challenges the sufficiency of commissions and allowances awarded to him in his respective capacities as assignee and attorney *pro se.* The United States (Director of Internal Revenue), a priority creditor of the estate in the amount of $3,432.06, seeks a vacation of the trial proceedings for lack of jurisdiction or, in the alternative, affirmance of the award of the County Court, Probate Division.

The assignor corporation, previously engaged in both a sheet metal business and the sale of oil and kerosene products, executed a deed of assignment to Tumarkin on April 21,

1958. On May 2, pursuant to *R. R.* 4:68–4, made applicable to assignment proceedings by *R. R.* 4:69, see *In re Xaviers, Inc.*, 66 *N. J. Super.* 561 (*App. Div.* 1961), Tumarkin applied for and obtained an order authorizing retention of himself as attorney and counsel *pro se* in connection with the administration of the estate.

The estate was originally evaluated at $4,270. The assignee's efforts, however, increased the total gross receipts, as settled in his account, to $6,444.53. A portion of this sum, $2,000, represented proceeds of a suit to recover money due and owing the corporate assignor on a series of notes. The assignee, in his final account, charged himself with the aforementioned gross receipts and claimed disbursements of $1,627.91, leaving a net balance of $4,816.62. He prayed assignee's commissions of $1,288.91 (representing exactly 20% of the gross estate) and an allowance as attorney *pro se* of $1,500, in addition to $30.54 for his disbursements as counsel.

The trial judge, after due consideration, awarded Tumarkin $500 in commissions and allowed him $325 (plus disbursements) as attorney *pro se*. His reasoning was apparently based upon *In re Pynn-Hawley Co.*, 63 *N. J. Super.* 50 (*Cty. Ct.* 1960), a copy of which he attached to his letter of disposition. The latter decision, stating that the 20% limitation of *N. J. S.* 2A:19–43 on "commissions and allowances" awardable to an assignee was inclusive of attorney's fees, was in effect overruled by our recent holding in *In re Xaviers, Inc., supra* (66 *N. J. Super.*, at *pp.* 578–579), wherein we pointed out that attorney's compensation was not paid "to the assignee" but was awarded directly to counsel by the court. The trial judge's total award herein, which amounted to approximately 13% of the estate, must thus be evaluated in the light of our rejection, in *Xaviers*, of his primary assumption.

The Government, at the outset, assails the jurisdiction of the court below. Its argument is centered around *N. J. S.* 2A:19–7, providing as follows:

"The assignee, upon receiving a general assignment, shall forthwith record it, including the inventory and list of creditors with their claims, in the county where the assignor resides and in any other counties or states where he may deem it necessary. The same shall be recorded in this state in the office of the register of deeds in counties having such an office and in the office of the county clerk in other counties. A copy of the same, executed by the assignor or certified by the register or county clerk, shall be filed by the assignee with the surrogate of the county where the assignor resides or with the clerk of the superior court."

It is urged that the import of this provision is that the copy of the deed must be filed with the surrogate "forthwith" upon receipt of the assignment, that the document must be on file throughout the administration of the trust, and that such filing is prerequisite to jurisdiction over the administration of the estate in the Probate Division of the County Court. It is pointed out, factually, as recited in the trial court's settlement of the case, *R. R.* 1:6–3, that the deed herein was not filed with the Union County Surrogate until January 9, 1961, five months after the assignee's final account had been confirmed. (It had been recorded in the Register's Office of Union County on April 23, 1958, two days after its execution.) Thus, the argument runs, since the statute is mandatory in all pertinent respects, and since jurisdiction cannot be conferred by consent where it is not authorized by law, the failure of the assignee to timely file with the surrogate is fatal to the right of the trial court to preside over these proceedings.

At the oral argument, Tumarkin was permitted by the court to offer in evidence original correspondence indicating that on March 23, 1960 he forwarded the original deed of assignment to the Surrogate of Union County along with his complaint on assignee's account, statement of claims proved before the assignee, affidavit of services rendered by him as attorney *pro se,* and cancelled vouchers showing a balance of $4,831.62. The Surrogate did not file the deed, perhaps because he was not expressly directed to do so by the assignee. The deed was returned by the Surrogate to the assignee on March 30, 1960, together with an acknowl-

edgment of receipt thereof. The deed was, however, never actually filed by the Surrogate in his public records. Since the transmission of the deed by the assignee to the Surrogate was well in advance of the hearing on the account, which took place May 27, 1960, and the order of approval on August 11, 1960, it would appear that the spirit, if not the letter, of the statutory direction of filing the deed with the Surrogate was observed by the assignee. We will consider, nonetheless, the Government's jurisdictional objection.

General jurisdiction over assignment proceedings is conferred by statute on the Superior Court or the County Court of the county in which the assignor's principal office is located. *N. J. S.* 2A:19–45. The choice of available tribunals is open to the assignee by virtue of the filing alternative afforded him by *N. J. S.* 2A:19–7. This conclusion is derived from *N. J. S.* 2A:19–1 (c), providing that:

"Where the copy of the general assignment is filed under section 2A:19–7 of this title with the surrogate of a county, 'court' means the county court, probate division, of that county; and where the copy of the same is filed thereunder with the clerk of the superior court, 'court' means the superior court. Said courts shall have jurisdiction over general assignments as stated in this chapter."

██ The Government submits that the foregoing statutory framework indicates that the deed of assignment is analogous to a complaint in a civil action, in that it is designed to apprise the public of essential details of the assignment and to give judicial life to the entire transaction. We are constrained to dispute this interpretation. The requirement of public notice is amply satisfied by the recording in the Register of Deeds, or County Clerk's office. And creditors of the assignor are sufficiently protected by *N. J. S.* 2A:19–11, requiring that the inventory, valuation and bond be filed by the assignee as a condition precedent to discharge of the estate. The primary design

of the direction to file a copy of the assignment with the surrogate (or the clerk of the Superior Court) is to provide a central depository for all papers which will become pertinent during the pendency of the court-approved proceedings. Of course, the filing of this paper is also a means by which the assignee may indicate his choice of court. *N. J. S.* 2A:19-1 (c), *supra.* But where, as here, the proceedings have been properly and fully conducted in the County Court, Probate Division, no assault being made on either the authority of the assignee or the trial court's and the public's awareness of his authority and of the nature and contents of his estate, the jurisdiction of the court cannot be successfully attacked merely on the ground that a copy of the formal deed of assignment was not filed prior to these proceedings.

Nor, as the Government claims, does the pertinent statute, *N. J. S.* 2A:19-7, mandatorily require immediate filing of the deed of assignment. Use of the term, "shall," is by no means conclusive of an enactment's purpose to declare compliance therewith a jurisdictional prerequisite. It is merely a presumption which can readily be overcome within the context of the obvious purpose of the particular legislation under scrutiny. See *Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381, 392 (1959). The more important consideration is whether the provision in question is of the essence of the law or merely relates to the form and manner thereof. *Lakewood Twp. v. Block* 251, *Parcel* 34, 48 *N. J. Super.* 581, 589-590 (*App. Div.* 1958). And if no public benefit ensues from and no private right is insured by according the word "shall" an imperative meaning, it is to be construed as directory rather than mandatory. *In re Norrell,* 139 *N. J. Eq.* 550, 554 (*E. & A.* 1947); *Sheldon v. Sheldon,* 100 *N. J. Eq.* 24, 25 (*Ch.* 1926).

As noted above, the provision in issue is not a vital cog in the substantive machinery of assignment proceedings. The filing requirement is plainly directed to notification

of the presiding tribunal of the assignee's authority, and to maintenance of a comprehensive depository for all pertinent papers in order that the propriety of the judicially supervised statutory proceedings may be subject to subsequent review. See, in a slightly different context, *Thomas Wood & Sons, Inc. v. Memelaar,* 11 *N. J. Misc.* 823 (*Sup. Ct.* 1933), holding that execution and delivery of the deed of assignment were effective to vest title to the assignor's property in the assignee notwithstanding the latter's failure to comply with certain of his statutorily prescribed duties, the court characterizing the legislative provisions as "directory only" and not affective of the efficacy of the deed. Also see 6 *C. J. S. Assignments for Benefit of Creditors* § 118 (a), *p.* 1298.

*In re Old Colony Coal Co.,* 49 *N. J. Super.* 117 (*App. Div.* 1958), relied upon by the Government, is not to the contrary. We were there concerned with a question striking at the heart of jurisdiction over assignment proceedings, namely, the meaning of "principal office" in *N. J. S.* 2A:19–45, *supra,* which we determined to be the registered statutory office designated under the General Corporation Act, *N. J. S. A.* 14:4–2. Nor should our conclusion therein with respect to the late filing by the assignee of his inventory, valuation and bond, *N. J. S.* 2A:19–9, 19–10, be thought to bear upon the present question; that exploration, in contrast to the instant statute, involved the express mandatory language of *N. J. S.* 2A:19–11, explicit in its requirement of prior filing. Moreover, in noting that judicial approval of a prefiling sale could there be vacated because of the obvious "procedural infirmity" (49 *N. J. Super.,* at *p.* 128), we in no way intimated that the court's jurisdiction was in issue.

We conclude, therefore, that the failure of the assignee to file a copy of his deed with the surrogate "forthwith" upon receipt of the assignment is not fatal to the jurisdiction of the County Court, Probate Division, over the assignment proceedings.

We pass to a consideration of the assignee's substantive objections to his award *qua* assignee and *qua* attorney *pro se*. The Government does not contest the propriety of the appointment of the assignee as his own counsel. While there is no express sanction for such practice in the statutes or rules (compare *N. J. S.* 3A:10–8 in the realm of decedent's estates), practical considerations, as well as the relevant provisions of *R. R.* 4:68, would appear to justify the Government's concession on this point.

██ Since our decision in *In re Xaviers, Inc., supra,* rejected the statutory-construction underpinning for the trial judge's award, we may consider his disposition on its merits, bearing in mind that the allowance of assignee's commissions and attorney's fees ordinarily rests within his sound discretion and should be upset only if the exercise thereof is manifestly erroneous, *Dickerson v. Camden Trust Company,* 1 *N. J.* 459, 468 (1949); *In re Broad Street National Bank of Trenton,* 37 *N. J. Super.* 171, 174 (*App. Div.* 1955), but noting that the trial judge was under the legal misapprehension that the total of attorney's fees and assignee's commissions could not exceed 20% of the assets received.

█ Consideration of the volume of work undertaken by Tumarkin, in his capacity as attorney *pro se,* leads immediately to the conclusion that his allowance of $325 was plainly insufficient. As counsel *pro se,* he filed a statement of services showing 277 hours of work, which included the preparation of papers regarding the discharge of various liens on the estate property, arrangements for the inventory and appraisal of the assets, correspondence and communication with various of the creditors, and the conduct of negotiations leading up to the settlement of the assignor's claim for possession of outstanding notes receivable held by a trustee of one of its creditors. In addition, once possession of the notes, in the amount of $2,000, was obtained, counsel instituted suit in the Superior Court against the maker, one Albert Capodanno, filed motion papers, conducted dis-

covery proceedings, and, after summary judgment was obtained against Capodanno, obtained a writ of execution to satisfy part of the judgment, the remainder being paid voluntarily. Even if this statement of hours listed is discounted as excessive, the time involved was quite substantial. The nature, character and extent of the services rendered, and the skill and success of the performer, clearly relevant factors in determining compensation, demand that an increase be ordered for Tumarkin in his capacity as counsel.

On the other hand, in evaluating the worth of Tumarkin's duties as assignee, careful comparison of his statement of counsel's services with the operations reflected in his assignee's account indicates quite clearly that the appointment of counsel for the assignee reduced the latter's functions principally to those of an administrative character. *Cf. In re Pynn-Hawley Co., supra* (63 *N. J. Super.,* at *p.* 54). Many of the strictly legal but non-litigative services which might otherwise have been performed by the assignee, if acting alone, have demonstrably been transferred onto the shoulders of the appointed counsel. This is a practice to be discouraged, and, in cases of manifest abuse, the attorney's appointment may well be vitiated and his request for compensation denied entirely by the reviewing court. *Cf. In re Xaviers, Inc., supra* (66 *N. J. Super.,* at *p.* 572). The practical solution herein, however, is to recognize the narrowing of the assignee's activities produced by his official employment of himself as attorney, and to avoid double compensation by limiting his assignee's commissions accordingly.

At oral argument, we invited counsels' reconsideration of whether "allowances," as used in *N. J. S.* 2A:19–43, should be given a broader construction than as held in our decision in *In re Xaviers, Inc., supra,* in view of the substantial amount of expenses for which the assignee seeks allowance in his final account. Supplemental briefs on the subject have been filed and considered. The problem is a

troublesome one. However, since the Government has not appealed the amount of commissions allowed in this case, and since the problem may, hopefully, be solved by the adoption of legislation striking the term, "allowances," from the statute (which we strongly recommend, see *In re Xaviers, Inc., supra,* 67 *N. J. Super.,* at *pp.* 577–578), this question will not be further considered at this time.

The judgment of the trial court will therefore be modified in the following manner: the award of $500 in assignee's commissions will rest undisturbed; the allowance of counsel fees will be raised to a sum commensurate with the services performed, namely, $1,000 (plus the requested out-of-pocket disbursements of $30.54), together with costs on this appeal.

So ordered.